UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | |
| : | **CRIMINAL NO. 13-00253 (RWR)** |
| **RODNEY CLASS,** : | |
| : | |
| **Defendant.** : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S REQUEST FOR REMOVAL OF GPS MONITORING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's request for removal of GPS monitoring as a condition of his pretrial release. On May 21, 2014, the defendant was convicted in Lincoln, North Carolina of resisting a public officer and failing to wear a seatbelt and sentenced to a suspended term of imprisonment. On May 22, 2014, the Pretrial Services Agency requested that the defendant's conditions of release be revoked. Given the defendant's non-compliance with his conditions of release, if the Court permits the defendant to remain on release pending trial, it should not reduce his level of supervision by ordering removal of GPS monitoring.

I. **Factual and Procedural Background**

The government expects the evidence at a hearing or trial to show that, on May 30, 2013, at approximately 11:35 a.m., the defendant parked his Jeep Rubicon in a permit-only parking area on the south side of the Capitol near the U.S. Botanic Garden.[1] The defendant got out of the Jeep and walked into House and Senate office buildings where he had paperwork purporting to

---

[1] This area is reserved for employees of the House of Representatives.

1

appoint him a "Private Attorney General" time stamped at the offices of various committees and Members of Congress.

While the defendant was in the Capitol and its office buildings, United States Capitol Police Special Agent Laneeka Manning was on patrol and observed the defendant's Jeep displaying North Carolina license plates parked in the permit-only parking area. Manning approached the vehicle and determined that the Jeep did not have a parking permit displayed on the front windshield. Manning looked through the windows of the Jeep and observed, in plain view, a machete strapped to the roll bar and what appeared to be a holster in the map pocket of the driver's side door. Manning radioed for additional officers and a bomb dog to come to her location in the parking lot. After conducting a search for the registered owner of the Jeep, officers obtained the name and a photograph of the defendant.

At approximately 1:30 p.m., the defendant left the Capitol building and walked back to the parking lot. As the defendant approached the Jeep and the Capitol Police officers, the officers asked the defendant if his name was Rodney Class. The defendant acknowledged that was his name. An officer asked the defendant if it was his Jeep and the defendant confirmed that the Jeep belonged to him. For the safety of the officers, a police officer asked the defendant if he had any weapons on him to which the defendant replied that he did not. An officer inquired of the defendant whether there were weapons in the vehicle and the defendant confirmed that there were. The officer asked the defendant if he could check the defendant for weapons and the defendant responded that was fine. The officer then frisked the defendant and did not discover any weapons.

Roughly contemporaneous with this frisk, the defendant said words to the effect of, "We're on the same team," and said he had a document to prove it. One of the officers asked the

defendant what he meant and the defendant showed the officers a document which the defendant claimed appointed him a law enforcement officer.  When an officer asked the defendant about the document, the defendant said he was on his way to arrest a federal judge in Pennsylvania but, before he could do so, he needed the document to be signed by Members of Congress.

The officers asked the defendant to sit in the back seat of a police car while they continued to conduct their on-scene investigation.  After complying with this request, the defendant asked the officers if there was a problem and an officer informed the defendant that it is illegal to have weapons on Capitol grounds.  In response, the defendant told the officers, *inter alia*, that he is a "Private Attorney General," federal law does not apply to him, the District of Columbia is not a state, federal agents do not have authority to enforce the law in the District of Columbia, and the Capitol Police do not have arrest authority.

Shortly thereafter, the officers took the defendant out of the police car, placed him in handcuffs, and informed him that he was under arrest.  During this process, the defendant continued to claim that the officers did not have authority to arrest him.  Officers asked the defendant if he would consent to a search of his car and he initially agreed but, once he was given a written consent form and the officers told him they could not make the textual changes he requested, the defendant refused to sign the form.  The officers placed the defendant in a police wagon and transported him to the Capitol Police headquarters.  They towed the Jeep to the Metropolitan Police Department's impound lot while they applied for, and eventually obtained, a warrant to search the Jeep.  During a subsequent search of the Jeep pursuant to the warrant, officers recovered two loaded pistols, a loaded rifle, over 200 rounds of ammunition, 15 knives, and three axes.  The guns were found (a) in a holster between the front seats, (b) inside a rifle case behind the front seat, and (c) in a suitcase in the rear of the Jeep.

On May 31, 2013, the defendant was charged by complaint in District of Columbia Superior Court with Carrying a Pistol, in violation of D.C. Code § 22-4504(a).  After a three-day period of detention under D.C. Code § 22-1322(b), the defendant was released on his personal recognizance with conditions including a stay-away order from the District of Columbia.  On September 3, 2013, a grand jury indicted the defendant in the United States District Court for the District of Columbia on two charges: Unlawful Possession of a Firearm on Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1), and Carrying a Pistol, in violation of D.C. Code § 22-4504(a).

On September 5, 2013, the defendant surrendered to United States Capitol Police, and was arraigned on the indictment before Magistrate Judge Facciola that same day.  At the time of arraignment, the government did not oppose the defendant's release and Judge Facciola ordered that the defendant be released on his personal recognizance, that he be monitored by GPS device, that he report as directed by Pre-Trial Services for the Western District of North Carolina, and that he stay away from the District of Columbia except for court-related matters.  The defendant has remained on his personal recognizance since that time.

On February 20, 2014, a North Carolina state trooper conducted a traffic stop on a car the defendant was driving.  The defendant exited the car, took an aggressive stance and loudly stated he was "travelling in commerce."  While facing the trooper, the defendant reached for an area in the small of his back.  The trooper drew his weapon and ordered the defendant to put his hands in the air.  The defendant resisted while being handcuffed but was eventually detained and placed under arrest.  While checking the defendant for weapons, the trooper discovered a survival kit around his neck which contained several blades and a saw blade in a square plastic package.  For this conduct, on May 21, 2014, the defendant was convicted in Lincoln, North Carolina of resisting a public officer and failing to wear a seatbelt.  He was sentenced to a 45-day suspended sentence, ordered

to pay fines and court costs totaling $255, and placed on unsupervised probation for twelve months.

## II.     ARGUMENT

Defendant now claims that the Court's requirement that he be subject to GPS monitoring while on pretrial release violates the Eighth and Thirteenth Amendments.  See Defendant's Rules of Court; Judicial Notice of Adjudicable Facts; Request for Removal of the GPS Tracking Device Re: Peonage [D.E. 95] at 3.  Though he does cite to these amendments and to a federal criminal statute, the defendant does not reference any relevant legal authority for his assertion.  The defendant also does not address 18 U.S.C. § 3142, the statute authorizing this Court to set conditions of release such as monitoring by GPS device.  The defendant's claims therefore lack merit.  Indeed, given his recent conviction for a crime he committed after this Court released him on conditions, if any change in the defendant's bond status is appropriate, it should be revoked.

**WHEREFORE,** the government respectfully requests that this Court deny the defendant's request to remove him from GPS monitoring.

Respectfully Submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
BAR NO. 447-889

By:     \_\_\_\_/s/_____
PETER C. LALLAS
Assistant United States Attorney
New York Bar
(202) 252-6879
Peter.Lallas@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 6th day of June 2014, a copy of the foregoing was served on the defendant's stand-by counsel, A.J. Kramer, via the Court's Electronic Filing System. A copy was also served by mail on the defendant at 432 North Lincoln Street, High Shoals, NC 28077.

_____/s/_____
PETER C. LALLAS