IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

      Government,                    CR No. 13-253

                                    Washington, DC
      vs.                            April 7, 2014
                                      11:07 a.m.

RODNEY CLASS,

      Defendant.
_____

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE GLADYS KESSLER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        Peter C. Lallas
                           U.S. ATTORNEY'S OFFICE
                           555 Fourth Street, NW
                           Washington, DC 20530
                           (202) 252-6879
                           Fax: (202) 616-2296
                           Peter.Lallas@usdoj.gov

For the Defendant:         Rodney Class
                           432 North Lincoln Street
                           High Shoals, NC 28077
                           PRO SE

    (Standby Counsel)      A. J. Kramer, Esquire
                           FEDERAL PUBLIC DEFENDER FOR D.C.
                           625 Indiana Avenue, NW
                           Suite 550
                           Washington, DC 20004
                           (202) 208-7500
                           Fax: (202) 208-7515

Court Reporter:                     Lisa M. Foradori, RPR, FCRR
                                    Official Court Reporter
                                    U.S. Courthouse, Room 6706
                                    333 Constitution Avenue, NW
                                    Washington, DC  20001
                                    (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                      P R O C E E D I N G S

2                THE COURT:  United States of America versus Rodney

3    Class.  13-253.  Counsel should identify themselves.  And,

4    Mr. Class, I did get the information that you were stuck in

5    traffic, and indeed, that traffic existed at 9:00 o'clock this

6    morning when I came in because NPR was talking about how

7    terrible it was.  So, I knew for sure that there was a

8    problem.

9                All right.  Would counsel, please, identify

10   themselves for the record.

11               MR. LALLAS:  Good morning, Your Honor.  Peter

12   Lallas for the United States.

13               MR. KRAMER:  Good morning, Your Honor.  A.J.

14   Kramer.  As you know, Mr. Class wants to represent himself,

15   so --

16               THE COURT:  I do.

17               MR. KRAMER:  -- I'm hear for him.  He left at 7:00

18   this morning and was in traffic for four hours.  He was

19   staying in Virginia last night, specifically to be here, and

20   was in the traffic for four hours on 66, so he apologizes.

21               THE COURT:  I know it was pretty terrible.

22               MR. KRAMER:  Yes.

23               THE COURT:  But I hadn't really thought through

24   that it might affect Mr. Class.  All right, everybody, we have

25   a lot of things to discuss today.  I know that Mr. Class,

1  through his stand-in counsel, has requested some additional

2  time to argue the motions.  I will try to accommodate that.

3  Our whole schedule is now off schedule.

4          I have two people coming in, I've told them to come

5  in later, but I must perform a marriage some time during a

6  lunch break.  So, we'll just see how things play out.

7          First of all, we had pending, when I left on

8  Thursday, 36 motions for Mr. Class.  And I gather that four

9  new motions were filed on April 4th.  Mr. Class, at this point

10  I am going to enter an order, and I am entering an order that

11  there are no more motions to be filed by you unless you get

12  explicit express approval from me to file the motion.

13  Forty-two motions are unheard of.

14          What is more, I told you I had looked at them all

15  at our last status, but I looked at them more carefully over

16  the weekend.  Many are duplicative, repetitious.  I find it

17  hard to imagine that there can be a new argument that you

18  haven't already made in the 36 motions that are pending, which

19  I will rule on.  So, that's number one.  And we will issue a

20  clear order in terms of everything I decide this morning.

21          Second of all, this is very important.  The

22  Government, April 3rd, filed what is called a 404(b) motion.

23  I don't know whether you've had a chance to talk with counsel

24  or not about it, but it is an important motion.  Rule 404(b)

25  refers to the Federal Rules of Evidence.  And this is a

1   perfect example of what I told you last week at our last

2   status about the complicity and the dangers of representing

3   yourself.

4           So, I'm telling you the Government filed the

5   motion.  Of course, I have no view on it at this point.  You

6   are absolutely not required, but have the right to file an

7   opposition.  And even though I'm probably not supposed to say

8   this to you, I would simply say, it's in your interest to file

9   some kind of an opposition.  And you do have permission -- I

10  want to make it very clear in my orders -- you have permission

11  to file an opposition to the Government's motion.  And that

12  opposition should be filed no later than April 15th.  That

13  gives you a full week -- a little more than a week.

14          We should be, today, setting a trial date, which

15  may or may not happen, depending upon my ruling on the

16  motions, but I'd like everybody to look at their calendars.  I

17  do have a question for the Government first, though.  Give me

18  a very rough approximation of how long a trial you think we're

19  talking about.

20          MR. LALLAS:  I think following jury selection, two

21  to three days for the Government's case.  I think we have in

22  the neighborhood of 10 witnesses.

23          THE COURT:  All right.  And, Mr. Class, you don't

24  have to answer this question, I mean, that's your right and I

25  respect it.  But if you wish to, and if you can, can you give

1    me any idea of how many witnesses you might have, just so I

2    know how to schedule.

3                THE DEFENDANT:  At this point --

4                THE COURT:  Come forward to the podium, please.

5    I have to say that, everybody, because they forget.

6                THE DEFENDANT:  Thank you.  At this point I'm not

7    real sure until we find out what we're going to do here today.

8                THE COURT:  All right.  I understand.

9                THE DEFENDANT:  To be honest with you, we got some

10   issues that I think we need to resolve today before we move to

11   that point.

12               THE COURT:  All right.  I am going to set a date,

13   though, so everybody gets it on their calendar because these

14   are busy people.  I would like you to look at your calendars,

15   it will be a little ways away.  And, of course, the Speedy

16   Trial Act -- I don't even know if I mentioned that to

17   Mr. Class last week, but there is a Speedy Trial Act that sets

18   a period of time after which a trial must take place.

19               However, that deadline is tolled when there are

20   pending motions.  And so we have pending motions in this case.

21   I think you were filing motions before I even got the

22   paperwork.  So, we don't have to worry about that.  In terms

23   of my schedule, it would have to be in July where I do have a

24   lot of flexibility.  And I would say any time after July 7th,

25   which is after the 4th of July weekend.

1          Let me hear from the Government first.  And I would

2     put aside a good two to three days.

3          MR. LALLAS:  Your Honor, I'm free starting July 9th

4     for the rest of the month.

5          THE COURT:  Good.  Mr. Class, are you free during

6     that time?  It would be the week of July 7th.

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. Kramer.

9          MR. KRAMER:  Your Honor, I guess it partly depends

10    on your ruling about Mr. Class's representation of himself.

11    I think he wants to represent himself --

12         THE COURT:  He does.

13         MR. KRAMER:  -- and I don't think he wants standby

14    counsel or advisory counsel.

15         THE COURT:  Well --

16         MR. KRAMER:  I'm not clear if my presence is

17    necessary.

18         THE COURT:  Let me deal with that issue right away

19    then and come back to the jury trial.  Mr. Class, we had a

20    long discussion -- or I had a long discussion with you about

21    all the things you would have to be aware of.  I mean, I've

22    mentioned two already this morning.  And that first Government

23    motion can be a very significant one.  As to the Speedy Trial

24    Act, we don't need to worry about that.

25         It's a hard job, lawyers spend three years in law

1   school, and I'm not going to ask Mr. Kramer how many years

2   he's been out practicing criminal law.  So, tell me what your

3   decision is today as to whether you want to represent yourself

4   or not.

5               THE DEFENDANT:  I would like to, but I think -- as

6   I said, we need to discuss some things here today because I

7   want to lodge a formal complaint before we get into the

8   motions stuff because we got some very serious issues here.

9   And one of the issues is --

10              THE COURT:  Let me interrupt you because we have

11  things we've got to get through today.  A complaint about what

12  with whom?

13              THE DEFENDANT:  Well, I have not received one

14  single document from the prosecution.  Of all the motions

15  filed, I've never got one.  The only way I have gotten it is

16  because I've got people that are sitting on Pacer, saying:

17  Hey, Rod, the prosecutor just filed this.  So, that's how I'm

18  coming up with my paperwork.  I have not received one single

19  document, and that violates --

20              THE COURT:  All right.  Let me interrupt you.  You

21  have a right to discovery.  I know that several of your

22  motions that I've looked at deal specifically with your

23  discovery requests, and I will deal with them.  With a July

24  date, I don't think we'll have any trouble from the Government

25  getting the discovery that it is obligated to provide.  You

1   can be sure of that.  I will make sure of that.

2            So, let's talk again about that July date.

3            MR. KRAMER:  I'm sorry to interrupt, I should say

4   one thing about discovery.  The Government provided discovery

5   to our office when Ms. Quint was representing Mr. Class.  I

6   thought that had been provided to Mr. Class by Ms. Quint, but

7   I may be wrong.  But I'll make sure that he gets, this week,

8   everything that we've been provided by the Government in

9   discovery.  So, I can probably take care of most of the

10  discovery matter.

11           THE COURT:  Well, that's good to hear.  All right.

12  I skipped over something.  I'm still on the issue of what your

13  decision is about representing yourself.

14           THE DEFENDANT:  At this point, I'd just as soon

15  represent myself because, like I said, there is a lot of

16  things that is being violated.  I've been -- I was told --

17  Rule 17, which is filing pretrial motions --

18           THE COURT:  Let me interrupt you again.  I have a

19  definite schedule of things we have to take care of.

20           THE DEFENDANT:  Okay.

21           THE COURT:  I understand what your final decision

22  is, and I accept it.  And, by the way, you may change your

23  mind later on, you are allowed to do that, but for right now

24  you will represent yourself.  However, for many different

25  reasons, I'm going to have standby advisory counsel,

1  Mr. Kramer.  So, now you are appointed to do that.

2           And let's get back to the issue I was on maybe

3  three, four, five minutes ago, and that is whether Mr. Kramer

4  can make the July 7th date.

5           MR. KRAMER:  Your Honor, I'll make it work.  And

6  if -- there's one thing, and I don't know the dates of it that

7  has to do with our daughter, and I'm sorry, I wasn't prepared

8  to know exactly when -- I know it's in July some time, but I

9  think it's later in July.

10           THE COURT:  Okay.

11           MR. KRAMER:  I would ask -- and I can get someone

12  else, I think, that would be acceptable to Mr. Class as

13  standby counsel, if for some reason I can't make it on the

14  7th, either from our office or the CJA panel.  But I'm okay

15  with the 7th right now, I think.  I don't want to go through

16  asking everybody to change the dates, so I will either be here

17  or provide stand-in for myself.

18           THE COURT:  Would you file a praecipe as soon as

19  you know whether you are free on the 7th date?

20           MR. KRAMER:  Surely.

21           THE COURT:  So we all know that.

22           MR. KRAMER:  Surely.

23           THE COURT:  All right.  The next part of my order

24  will be the trial is set for January -- not January,

25  everybody -- July 7th.  And we've dealt with the waiver of

1    counsel issue, and that decision has been made by Mr. Class.

2           At this point we are ready to start oral argument

3    on the motions.  I probably have a couple of questions as

4    Mr. Class goes through them, not on every motion, by the way,

5    but on a couple of them I have questions.  So, Mr. Class, you

6    may begin at this time.  And it's very important for our

7    record that you make clear what motion you're referring to.

8           With 36 motions pending, it's hard enough to keep

9    track of them.  Each motion has a docket number, and I would

10   like you, as you go through, to please identify the docket

11   number that you are referring to, and that way I have a long

12   list of all of the motions -- hold on just a minute -- and I

13   can probably give you the docket numbers based upon the title

14   of your motions, if you don't have them handy.

15          THE DEFENDANT:  Well, that would be nice if I had

16   gotten my time-stamped copies back.

17          THE COURT:  I'm sorry, say that again.

18          THE DEFENDANT:  It would have been nice if --

19   because when I filed paperwork in by Certified Mail, I sent

20   three copies in, one for the clerk, one for you and one to be

21   sent back.  It would have been nice if I got my mine back.

22          THE COURT:  One to be sent back?  Mr. Class --

23          THE DEFENDANT:  I put a self-stamped envelope on

24   this for it to be sent back to me.  I paid for the postage to

25   be sent back.  That's why I would have --

```
 1              THE COURT:  Just a minute now.  Just a minute.  All
 2   the lawyers, as you may or may not know, use our electronic
 3   filing system.  I know that people who are operating pro se
 4   usually are not able to use it just because they can't learn
 5   it.  But I don't believe, and I'll be corrected by either
 6   lawyer, that it is the Clerk's duty or practice to send you
 7   back a copy.  You filed them and you could have made copies on
 8   your own copier or on your computer, I don't know which you
 9   use.
10              THE DEFENDANT:  Well, I used my computer, but I
11   sent a self-stamped envelope.  I paid for the postage to be
12   sent back so it wouldn't cost the Government anything.
13              THE COURT:  Well, did you ever ask anybody what the
14   proper procedure was?
15              THE DEFENDANT:  Well, I sat down and asked about
16   filing it electronically because I'm not an attorney and I
17   don't have a card; I can't do it.  That's why I've been
18   mailing everything in because if I walked up here I get
19   time-stamped and I walk back --
20              THE COURT:  Slow down, Mr. Class.  We have a court
21   reporter and a very good one.  She's got to take every word
22   down.
23              THE DEFENDANT:  All right.
24              THE COURT:  Well, I'm going to have you go forward
25   and you will be talking about the substance of your motions,
```

1    and then I will be able to figure out, not probably during the

2    hearing, but after the hearing I'll be able to figure out

3    which motion your comments are addressed to.  As we go through

4    it, if I think you've missed any motion, I'll let you know

5    that.

6              THE DEFENDANT:  Okay.

7              THE COURT:  All right.  Please, proceed.

8              THE DEFENDANT:  All right.  I want to start with

9    the beginning of how this thing started on May 30th.  I came

10   up to Washington D.C. to file some paperwork before the

11   Judiciary Committee in the House for a private attorney

12   general, which I have time-stamped copies that come in and

13   show that I did file -- I hold the position as a private

14   attorney general and a constitutional bounty hunter through

15   legislative acts, because Congress gave us this ability.

16             So, I did come up here.  This was the reason why I

17   came up because I was on my way to a court case --

18             THE COURT:  Mr. Class, keep an eye on our court

19   reporter.  I think you and certainly I will know if she's

20   having trouble.

21             THE DEFENDANT:  All right.  Well, I came back from

22   the Senate building.  I come back to my vehicle and I seen

23   D.C. police officers around my Jeep.  And I walked up, and

24   they asked me if this -- is this your Jeep?  I said:  Yes, it

25   is.  They said:  What is your name?  I said:  My name is Rod

1    Class.

2              THE COURT:  I'm going to interrupt you for a

3    minute.  I can see Mr. Kramer's face --

4              MR. KRAMER:  Could I talk to him for one second,

5    Your Honor?

6              THE COURT:  Yes.

7    OFF THE RECORD DISCUSSION

8              MR. KRAMER:  Thank you, Your Honor.

9              THE DEFENDANT:  All right.

10             THE COURT:  So, Mr. Class, I don't know what

11   Mr. Kramer said, although I can guess at it.  Don't say

12   anything about which -- don't give me facts about which you

13   might be testifying, because you could be prejudicing yourself

14   now.  You can certainly tell me, and I'm looking at your

15   Docket Number 20 and Docket Number 23, which deals with Second

16   Amendment arguments and Fourth Amendment arguments.

17             You definitely make your Second Amendment argument,

18   and you don't have to say anything related to the facts, or

19   very little.  And you can make your Fourth Amendment

20   arguments.  So, let's proceed with those two now.

21             THE DEFENDANT:  Okay.  According to Civil Procedure

22   and Criminal Rules of Evidence, both of your books here -- all

23   right?  Under the Rules of Evidence under 402, general

24   admissible of relevant evidence.  Since there -- it says that

25   you can bring in the United States Constitution, you can bring

1    in federal statutes, you can bring in these rules and Supreme

2    Court decisions under 402.  Under Rule 501, privileges

3    immunities, again, it allows you to make constitutional

4    issues, it allows you to bring in the federal statutes and

5    allows you to bring in the rules of court.

6              THE COURT:  You can proceed.  She's okay.

7              THE DEFENDANT:  Under Rule 802, hearsay evidence.

8    Again, it allows you to bring in federal statutes, it allows

9    you to bring in rules and other Supreme Court decisions.

10   Under Rule 902 under evidence it allows you to bring in

11   presumptions or prima facie, referring back to the statutory

12   law, which is the federal codes.  Okay.

13             I based all those off these books.  All right.

14   What we have here -- if we're allowed to make a constitutional

15   issue through the Rules of Evidence, then the Second Amendment

16   right is a constitutional issue, and so is Article 4,

17   Section 1, of full faith and credit of public acts.  North

18   Carolina does have a carry permit law.  They do allow you to

19   carry.  The purpose of a carry permit law is to allow you to

20   carry; not leave it at home.

21             North Carolina also has what is known as a "make

22   your day" law or what is known as Castle doctrine.  The Castle

23   doctrine allows you to not only have the stuff in your house

24   but allows you to carry it in your car while you're traveling

25   to where the car is protected under the Fourth Amendment as

1  property.

2              THE COURT:  Is all of this under state law?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  All of these things that you are

5  permitted to do that you're referring to are under state law.

6  I just want to be clear about that.

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay.

9              THE DEFENDANT:  But what you also have is under

10  Article 4, Section 2, it says that the people -- in your state

11  you're supposed to have the same equal privileges no matter

12  where you go, from state to state, and into territory, equal

13  protection.

14              All right.  The Fourteenth Amendment, Section 1,

15  says we're all supposed to be equally protected.  Title 42,

16  1981, it says we are to be equally protected.  It doesn't say

17  if the Government decides to allow you.  It doesn't sit there

18  and say as long as you're in your house you have equal

19  protection.  It sits there and says you are to have equal

20  protection.  I'm a very simple man and that's how I read

21  things.  And this is how it's supposed to be read.  The law

22  isn't supposed to be complicated.

23              But now you're coming back in under that Article 4,

24  and it comes back in and it states that there has to be a

25  complaint filed first with an oath and affirmation.  If the

1    prosecution or if the plaintiff is a piece of paper, which is

2    what the law is, how can a piece of paper write out an

3    affidavit and swear an oath before a judge that a complaint

4    has been done.

5             Well, see, this comes back in under your Rules of

6    Criminal Procedure.  It sits there and says, Rule 3, a

7    complaint has to be filed.  Rule 4, an arrest warrant and

8    summons upon a complaint.  Your Rule 5, sits there and says a

9    complaint, a sworn affidavit.  Your Rule 5 sits there and

10   says, before anybody talks to you you have to be Mirandized,

11   you have the right to remain silent, you have the right to

12   counsel.  You have the right -- you know, the whole Miranda

13   setup.  Well, that goes right back in to the Fifth Amendment.

14            I was interrogated for almost four hours.  Four

15   hours.  And at the end, after they sat down and did search --

16   did the interrogation, and I kept repeating back, you know,

17   let me get on my computer, I will show you exactly what I'm

18   talking about.  I'll show you the laws.  They said, well,

19   you're not allowed to have your computer.  Well, at that end,

20   they dismissed the charges on the traffic ticket because I was

21   illegally parked because I didn't know I wasn't allowed to

22   park there because the sign was up on top of the post and I

23   always parked there.

24            But then after they turned around and dismissed the

25   parking ticket, Officer Manning come up and said:  Okay,

 1   Mr. Class, we're going to place you under arrest.  You have

 2   the right to remain silent.  Anything you say can and will be

 3   against you in the court of law.  You have the right to an

 4   attorney.  Do you understand these rights?  I said:  Yes.  I

 5   signed the piece of paperwork.

 6          Then I sat down and asked them:  Now, wait a

 7   minute, you're telling me that you interrogated me all those

 8   hours, I had went through this.  You didn't have a search

 9   warrant for my Jeep.  You didn't have a complaint, because you

10   told me you didn't.  And now you're going to sit here and read

11   me my Miranda, and now you're going to sit here and charge me.

12   I said:  Wait a minute, we got a violation here because you

13   can't use any of this because this now falls in what the

14   Supreme Court has ruled as fruit of the poison tree.  Because

15   you dropped a ticket and you interrogated me for three to four

16   hours, and now you're going to read me my rights.  I said:

17   No, this is a violation.

18          Well, then I started to get into the legal

19   definitions, and this -- again, this is in the paperwork.

20   Again, I'm coming back in under your Rules of Evidence,

21   bringing in the Constitution, bringing in statutory law,

22   federal law.  The definition of the word firearm by all legal

23   definitions, and the National Firearm's Act under Section A,

24   is a sawed-off shotgun of a barrel of less than 18 inches,

25   overall length less than 26.  A sawed-off rifle of less than

1  18 inches, overall length less than 26.  A fully automatic

2  machine gun.  A silencer.

3           Under Title 26, United States Code, under IRS,

4  under 5845, the definition of the word firearm is -- it

5  repeats the same thing.  I'm not going to go through the

6  definition again.  The same thing with Title 27, under CFR,

7  479.11.  I did not have a firearm by the legal definitions.

8  This is my point.  This is why we put in the laws here.  All

9  right.

10          We also have brought in the word "person" which,

11  you know, we talked about this.  But the legislative, legal

12  definition -- again, I'm bringing in the statutes.  The word

13  "person" by legal definition is a corporation, it's a trust,

14  it is an estate.  The legal definition is what I want to hand

15  in to you -- is this birth certificate.  This is -- can I

16  hand it?

17          THE COURT:  Do you want to -- wait just a minute.

18  Do you want to submit that as an exhibit?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  That needs to be marked as

21  Defendant's Exhibit Number 1, please.

22          THE DEFENDANT:  So, by legislative legal

23  definitions, the word "person" under Washington's law here for

24  vital statistics under 7-201, the word "person" is classified

25  as a trust.  It's classified as an estate.  It's classified as

1    a corporation.  At no place has Congress ever sat down and

2    used the word "flesh and blood" (indicating), this is why I'm

3    coming in on the flesh and blood side.

4              So, we have legal definitions of issues here of

5    language.  But, yet, I'm being told:  Rod, you can't bring the

6    law up.  You can't bring constitutional issues in here.  Well,

7    your rule book says I can.  This is what I was based on.

8    Rule 12 under Criminal Procedure sits there and says I'm

9    supposed to be filing pretrial motions.  This is what I was

10   trying to do.  I've been trying to file motions into the

11   Court.

12             I've been trying to get this thing questioned.

13   This is why I asked for an in camera hearing in the very

14   beginning, so we could talk privately about this.  Let's

15   resolve this thing instead of sitting here and dragging this

16   thing out.  I've tried.  What we're doing here?  But the point

17   being of it is, according to all your rules, all your

18   regulations, including Rule 1101, application of the rules.

19   That's what this man is supposed to be following.  That's what

20   he's supposed to be following here.

21             Yet, when we're filing paperwork -- like I said, I

22   have not got one single document.  Of all the filings, I have

23   not got one.  The point being of it is, for him to come back

24   in and say the Government opposes following the law, opposes

25   following congressional statutes, opposing following the

1    constitution.  This upsets me to no end, especially when I'm

2    trying to follow the rules.  The basic line is, I'm not

3    stupid.  I'm not uneducated.  Just because I don't have a law

4    degree and I didn't go to college doesn't mean I'm not capable

5    of reading.  I am capable reading.

6            And this is where part of the problem is coming in.

7    I have got documentation, Title 18, 921, under of the Millers

8    versus United States, it comes in.  It dealt with a sawed-off

9    shotgun.  It didn't deal with a rifle.  It didn't deal with a

10   pistol.  It sits there and says that when they created

11   Title 18-921 for convicted felons, that they could not get a

12   sawed-off shotgun, which means a Class III firearm license.

13           I done a lot of history here.  I've done a lot of

14   research about what we're talking about.  So, all my arguments

15   are coming in based on trying to follow your rules.  It's what

16   we're following in.  But what I'm finding here, and in all

17   honesty, under Title 36, United States Code, under the Patriot

18   Organization, under Chapter 705 of the Federal Bar

19   Association, which is classified as a corporation, under

20   Section 705-03 for disqualifications, it clearly sits there

21   and says that anybody who refuses to uphold the laws of the

22   United States or refuses to uphold and stand behind the

23   Constitution is to be disqualified -- they are to be removed.

24           The Smith Act of 1940 sits there and dealt with

25   it -- communism in this country at that time period.  It comes

1   in.  Anybody who advocates the overthrow of the laws, anybody

2   who advocates to overthrow the Constitution or who refuses to

3   uphold the Constitution, they ought to be removed, they are to

4   be charged.

5              Now, I didn't make these laws up; Congress did.

6   These are statutory laws.  This is what we're in here fighting

7   on.  I have a carry and conceal permit.  I went through -- I

8   made sure that I was following the law by having a carry and

9   conceal permit.  I can show it to you.  I have one.  I still

10  have it.  The Second Amendment gave me the right.

11             Article 4, Section 2, it is a public law, public

12  act.  All public acts are supposed to be across the country.

13  Article 4, Section 2 in this thing, full faith and credit to

14  everybody who's supposed to have equal rights.  The Fourteenth

15  Amendment, it was created for equal rights.  Title 42, 1981,

16  made for equal rights.

17             I've got the -- the violations that we're running

18  here -- and also the fact that my paperwork wasn't filed

19  timely, and the fact that I did sit here and mail it in by

20  Certified Mail, your Rule 12.1, Rule 12.3 and Rule 34 says

21  14-day rule.  My paperwork was filed in plenty of time.  Was

22  it answered within a 14-day period?  No, not really.  I'm not

23  supposed to know any of this.  I'm supposed to be uneducated.

24             Now, search and seizure, Title 41.  Again, it

25  goes back in.  There had to be proper procedures on this.

1    There had to be warrants.  There had to be complaints.  The

2    police officer cannot be the complaining party, they can't be

3    the one who comes in, arrests you, search you, and then after

4    the fact come in, and say:  Okay, now we need to file a

5    complaint.  We need to file a warrant so now we can specify

6    exactly what he had and where it was at.  That isn't how this

7    is supposed to work.  The procedure right down the line has

8    been violated right down the line here.

9         If I trespassed -- if I come in here on this and

10   it was a gray bear -- and it was a gray bear, I'm seeing this

11   now -- but by coming in here I trespassed, and I didn't mean

12   to trespass.  I thought I was well within my full faith and

13   credit of rights of having a legal permit.

14        I thought I was right for coming in.  I didn't

15   see no signs coming in here that says:  Check your arms

16   because your local police department -- there's nothing here

17   that says you can't bring anything in.  This basically comes

18   into profiling because one thing that did come up out of this

19   is -- I have been asked by many different officers:

20   Mr. Class, you're one of them sovereign citizens, aren't you?

21   I said:  I resent this.

22        Number one, every state constitution created by

23   legislation --

24        THE COURT:  Mr. Class, I don't think that issue is

25   really pertinent.  So, we don't need to get off into that in

1    terms of a request being asked about your political or

2    personal views.  We need to deal with facts in this case and

3    the law as you're arguing it.  So, I think we can put aside --

4    not that I'm approving, but put aside the issue of whether you

5    were asked.  It would be possibly analogous to being asked

6    whether you were a Democrat or a Republican, but it doesn't go

7    to the issue that I will -- issues that I will ultimately have

8    to decide.  So, why don't you move on, please.

9              THE DEFENDANT:  Okay.  Like I said, looking at your

10   books and reading them, studying them, I have tried to follow

11   every one of your rules in here.  Like I said, your Rules of

12   Evidence sits there and says that the Constitution, federal

13   statutes and the rules and the Supreme Court decisions -- and

14   the Supreme Court decision, Crawford versus Washington, it was

15   just recently done here, sits there and says -- this was a

16   criminal case.  It sits there and says there had to be an

17   injured party.  It cannot be a statute.  It cannot be -- we're

18   just going to make it up because we're the government.  There

19   really had to be an injured party.

20              Sherar versus Cullen, that's C-U-L-L-E-N, I

21   believe.  Sherar versus Cullen.  This was an IRS case.  They

22   came back in because there was no injured party under a tax

23   issue, there was no corpus delicti.  Allen versus Wright,

24   another IRS case.  It got dismissed.  There was no injured

25   party.  No corpus delicti.  We're dealing also at this point

1   with the Clearfield Trust versus United States.  Clearfield

2   Trust doctrine.  It sits there and shows that federal laws

3   trump state statutes, and federal laws are supposed to be in

4   compliance.

5           Title 28 under 1343, franchise.  Anything that

6   Congress sits there and passed is supposed to be the laws of

7   the District of Columbia.  And if we are supposed to have

8   equal protection -- and under the Constitution we're supposed

9   to have equal protection, whether your city has gun permits or

10  not.  The fact that my state and other states does afford this

11  and the fact that the District of Columbia, like it or not,

12  you are part of the United States, you are a state because it

13  has been listed in many different things under DOT and under

14  IRS, the District of Columbia is considered a state.  It is

15  part of the United States, you are part of the country.  Full

16  faith and credit is supposed to come into here.  Even though

17  you don't have the right to carry, I had it for my state.

18  Full faith and credit means exactly what it means, full faith

19  and credit.

20          And I want to bring up the 1902 Dick Act.  The 1902

21  Dick Act repeals all of your gun laws.  These are all

22  congressional records.  We have got major violations on this

23  side of the courtroom, but yet -- you know, I'm trying to

24  bring it up, I'm being told, no, you can't bring any of this

25  up.  I was never supposed to know these.  I do know these.  I

1   may not have the college degree, but these books -- these

2   right here -- is different than this book (indicating).

3              THE COURT:  I'm very familiar with that book.

4              THE DEFENDANT:  Okay.  This doesn't give you all

5   the little annotated.  So, this is what we're being handed

6   out.  So, this is what I have to go by.  This is what my

7   understanding has to be.  Not this one, because we're not

8   supposed to know about this one.  But I do have one of these.

9              THE COURT:  Good.

10             THE DEFENDANT:  So, I have been doing some studying

11  on this.  Like I said, I may not be a lawyer, I may not have a

12  law degree, but I'm trying my best to fall within the rules

13  and regulations, and I'm trying to sit back and show in all

14  those documents -- this is pure violations.  There is

15  definitely a screw up on the Government's side on this thing.

16  They violated procedure.  They violated rules.  But yet you're

17  telling me that I have to be -- Mr. Class, this is very --

18  you're right, they are.  But don't you think that it's

19  supposed to go on this side of the fence?

20             They got the college degree.  They got the

21  education.  They got the knowledge.  I don't have all of that

22  stuff.  I've learned mine on the street corner.  I've learned

23  mine by picking up books.  So my level of all this may not be

24  as good as yours, but I think I have a basic understanding of

25  this.  And that's supposed to be leniency on my side that I'm

1   not supposed to be held to a higher standard than this

2   gentleman.

3           This is basically the whole argument here.  Like I

4   said, I came in here in good faith.  I came in here under the

5   private attorney general, which the United States had given to

6   the people in 1866 under the right -- under the act of the

7   people, civil rights and vindication.  Congress gave us the

8   power.  I have congressional stamps on this thing.  I got

9   congressional seals.  They received them.

10          It doesn't say that I get paid, it just says that I

11  stepped up for the position.  I stepped up for the position of

12  the bounty hunter under the Fourteenth Amendment.  The

13  Fourteen Amendment falls back under Title 42, 1983.  But the

14  Bounty Hunter Responsibility Act of 1999 and 2005 allows me,

15  Joe Citizen, to be able to come in before you and bring a

16  Title 42 charge and bring a claim in for violation of

17  constitutional violation, statutory violation.  So, we can

18  resolve this.

19          The reason why I am a threat and how the

20  prosecution has made me a threat is because I have knowledge.

21  Because I have tried to come back in and follow the rules.

22  You've seen my paperwork.  My paperwork is not in here --

23  whether they want to call it frivolous.  I actually quoted the

24  laws.  I actually quoted congressional records.  I actually

25  quoted the cites.  And if at any time the laws are frivolous

1   and the laws are unintelligible then we need to change them.

2           But I know for a fact that the reason why this

3   whole prima facie law is in 1940 -- 1925, I got the

4   congressional records under Volume 44 of the statutes at

5   large.  The United States Codes were never passed by both

6   houses.  It was only passed by the House.  The Senate never

7   passed it.  And in the statutes at large under Volume 44 under

8   prima facie, it sits there and uses the two words that it does

9   under Rules of Evidence that 902 -- it comes back in and says,

10  if it's prima facie or presumed to be law, and that's exactly

11  what the U.S.C. codes are, they're presumed, they're prima

12  facie.

13          If you got into it and it's in that paperwork under

14  the Federal Registry, 1935, Congress allowed the

15  Administrative Committee and the President to take the

16  statutes at large and turn them into administrative codes

17  under Volume 40 which falls back under the public works.  All

18  this is congressional documents.

19          My paperwork really gets into congressional history

20  of laying out the laws and defining the laws.  The fact that

21  you may not be educated -- and don't take this wrong, I don't

22  mean it as an insult -- but you're not taught a lot of this

23  stuff.  I did the research.  I got a research team with me on

24  what we do.  We all work together on all of this.  We're

25  trying to educate -- we're trying to get people aware.

1        Like I said, the laws that was written out are

2   prima facie.  The book says there -- I can get you any U.S.C.

3   code and open it up and it says prima facie.  That's what I

4   showed Mr. A.J.  He looked at it, and he just went

5   (indicating).  Every one of these books, prima facie, prima

6   facie, prima facie.

7        So, this is what we're dealing with here.  My

8   argument today is that the rules say that I have to be

9   Mirandized.  I wasn't until after everything was done.  The

10  rules and the statutory law says, because I have a carry

11  permit from one state I'm supposed to have equal protection

12  from one state to the next.  The 1902 Dick Act invalidates all

13  gun laws -- it don't say some, it invalidates them all.  It

14  cannot be repealed.

15        Like I said, what we're pulling up on the statutes

16  at large, it sits there and shows Roosevelt, 1935 -- 1933,

17  under executive order, 6174, Public Works Administration.

18  This is where he went back in and did all the statutes and put

19  them under administrative law, not people law, administrative

20  law.  We are dealing with administrative issues in here.

21        We've got 1925, congressional records that come

22  back in and it validates exactly what I'm sitting here saying.

23  I can turn this in and all this evidence with you if you want

24  me to turn them in.  We can mark them as exhibits.  You can

25  read them.  If you want to take my word, you know, but I have

1    what I'm sitting here saying.  This is my defense.

2           I didn't break any laws.  I was well within my

3    protected rights of a Second Amendment.  Congress has never

4    repealed the Second Amendment.  Has never repealed it.  But

5    yet we got issues here.  And the people that is sitting in

6    D.C. here in the Government, again, that's sitting in there --

7    when they raised their right-hand and they swore that they

8    would uphold the Constitution and they would defend the

9    Constitution, that does not mean you take the job, and say:

10   Okay, we can throw the Constitution out because we don't have

11   to abide by it now.

12          Like I said, that violates Title 36 under Chapter

13   705 under Section 705-03.  The moment you sit here and refuse

14   to uphold the Constitution, the moment you refuse to uphold

15   the laws, that's disqualification.  I didn't write that,

16   that's in your law books.  That's the same thing with the

17   Smith Act.

18          Your Honor, I'm not trying to be hard here, I'm

19   not trying to be contrary.  I'm trying to follow the law and

20   I'm trying to get the Court to do, follow the law, follow the

21   rules.  Just because I'm not supposed to be educated or

22   knowledgeable doesn't give this man the right to sit here and

23   take advantage of me because Mr. Class don't know the rules so

24   we can have all his paperwork stricken because he doesn't know

25   that he can have the evidence put in.

1           This is wrong.  There's supposed to be morals on

2   your side, there's supposed to be integrity on your side.

3   Whether I'm stupid, illiterate, there's supposed to be honesty

4   on your side of the fence.  And there is no honesty on this

5   side of the fence.  They are going on the facts that I'm

6   ignorant; and I'm not ignorant and I resent that.

7           THE COURT:  Mr. Class, don't make it into a

8   personal dispute, it's not helpful.

9           THE DEFENDANT:  I understand.  But this is the --

10  the reason why I'm being taken advantage of is because I

11  didn't know the rules or they thought I didn't know the rules.

12  Like I said, all the rules, what I have read here, like I

13  said, Rule 402, Rule 501, Rule 802, Rule 902, clearly sits

14  there and says federal laws are admissible.  The Constitution

15  is admittable.  Supreme Court decisions are on my side.  It

16  doesn't sit here and say only for the Government and the

17  defendant is not allowed to bring them in.  It doesn't say

18  that.

19          I haven't found that anyplace in these two books.

20  I haven't even found it in this book.  That says that I'm not

21  allowed to use it as a defense.  Basically -- this is my

22  argument, Your Honor.  I'm innocent.  I sat there and I have a

23  carry permit.  I followed the laws.  It doesn't sit here and

24  say that I have to leave my stuff at home.

25          THE COURT:  Is it fair to say that the essence of

1   your defense, listening to you this morning, is that this

2   prosecution is illegal because it violates the Second

3   Amendment.  Is that a fair statement?

4            THE DEFENDANT:  No.  What I'm sitting here saying

5   is -- is that if I'm supposed to be read my rights under

6   Rule 5 before you talk to me, then the police officer should

7   have Mirandized me before they asked me any questions.  Don't

8   interrogate me for three or four hours and then turn around,

9   and say, now we're going to arrest you, after they already got

10  all the information.  Because under the Fifth Amendment I was

11  not supposed to be self-incriminating in this thing.

12           Under your own Rules of Criminal Procedure, Rule 5,

13  there is supposed to be Mirandizing.  Mirandizing never

14  happened.  The other issue is that the Second Amendment is

15  also my argument in this thing -- is the fact that I do have a

16  carry permit.  I made sure that I followed the law on this.

17  And even though -- you guys don't have it here, I am under the

18  impression under the way the Constitution reads, under

19  Article 4, I am to have full faith and credit from one state

20  to the next.  This isn't like going from Germany into England

21  or Germany down into Italy.  We're supposed to be one country.

22  We're supposed to be united.

23           This is supposed to be -- well, this law has

24  this -- because if that's the case, then my driver's license

25  is no good in D.C.  Because this comes right back into -- this

1    comes right back into treaty agreements from state to state.

2    Every state is supposed to honor everybody's state.  Even

3    though you may not have the right here, that's fine, but the

4    point is that I do have that right and it was supposed to have

5    been honored.  That is my argument.  It was supposed to be

6    honored.

7            I was never read my Miranda.  I was never sat here

8    and told up front.  This is where my problem is coming in.

9    Like I said, I'm throwing myself on the mercy of this Court at

10   this point, because like I said, my rights have been violated

11   on this thing.  And what you said at the beginning of this

12   whole thing here, how serious and how grave this is.  Your

13   Honor, it is serious, because what's being deprived from me

14   was supposed to be federal statutory rights, constitutional

15   rights, the rules.

16           If they get thrown out because the Government is

17   bringing them in because everybody is on the same paycheck

18   here, and this gets thrown out because -- this isn't how it's

19   supposed to work.  This is not how it's supposed to work.  I

20   either have equal protection or equal rights or we don't have

21   anything.  So, my argument is -- I was never Mirandized and,

22   in fact, I do have and I followed the law, and the law says

23   you can't create laws against the Constitution, and you can't

24   rule against the Constitution, and you can't rule -- if you

25   guys don't like the federal laws, then change them.

1          In the meantime, I'm going by what the federal law

2    sits there and says.  I'm going by legal definition.  What is

3    a firearm?  A firearm is a sawed-off shotgun.  Sawed-off

4    rifle.  Less than 26 inches.  A fully automatic machine gun.

5    A silencer.  I didn't have any of these.  I did not have what

6    is classified as a firearm.

7          Why did Congress define it?  Why did Congress

8    define a person to be a corporation, an association, a trust?

9    Why did not Congress come out and say:  Okay, a person is

10   flesh and blood and leave it at that.  That isn't what they

11   did.  So, this really comes into sort of a political question

12   here of legal definitions of the words.  What are the legal

13   definitions of the words?  Are we going to go by what Congress

14   says or are we going to make up our own definitions,

15   because -- well, it's inconvenient because we don't want

16   Congress coming in here, so we're going to make up our own

17   definitions.

18          THE COURT:  Mr. Class, I think you've made some of

19   these arguments already.

20          THE DEFENDANT:  I did, but I'm just reiterating the

21   importancy of it; what my ground is.  At this point, I'm going

22   to yield that -- I think I have said about as much -- I've

23   brought in the rules and I've showed what rules are being

24   violated, how I'm -- that's it.  Like I said, that's the

25   difference between this book and this book for reading.  But

 1   this is what people are being handed out.  If you want us to

 2   be better educated, then start handing out these.

 3          Otherwise, if we're going to be handed these, then

 4   this is what we're going to have to go by for knowledge.  If

 5   you want me to turn these in as evidence of what we're talking

 6   about, I'll be more than happy.  I highlighted a lot of yellow

 7   into these for the rules.  If you want I'll turn them in for

 8   evidence.  I think they need to be turned in so you can

 9   understand where I'm coming from on this.

10          THE COURT:  Oh, I don't need to rules; I have

11   copies, believe me.  Thank you.

12          THE DEFENDANT:  All right.

13          THE COURT:  But, for the record, Mr. Class was

14   offering to submit copies of the Federal Rules of Evidence and

15   the Federal Rules of Criminal Procedure and our local rules,

16   which is, as I said last time, our law clerk sent him so he

17   could have that.  And I've indicated that I have copies of all

18   of that, so, therefore, they didn't need to go into the record

19   as such.

20          All right.  Thank you, Mr. Class.

21          THE DEFENDANT:  Okay.  But like I said, Congress

22   did pass these, I do hold that position as a private attorney

23   general and a bounty hunter through Congress, in the same

24   fashion that this Court holds its possession under the 1866 --

25   or the 1897 Judiciary Act.  The way this Court was created

1  through Congress, the way his office was created through

2  Congress, and the way this gentleman's office was through the

3  judiciary, which they're very proud of, because Congress did

4  create the U.S. Marshals, and they also created the private

5  attorney general side of this thing.  I do hold that position.

6  I do have time-stamped copies.  This is one of my foundations

7  for being able to come in and argue on my own case.

8               THE COURT:  Okay.  Thank you.

9               MR. LALLAS:  Your Honor, if I could just begin on a

10  procedural issue.  At the beginning of the hearing Your Honor

11  mentioned that the defendant filed four motions last Friday.

12  As of the time I left for the courthouse this morning those

13  had not been docketed, so I haven't received any of them

14  through ECF.  So, I would just ask the Court if the Court is

15  inclined to grant any of those motions, I would just ask the

16  Court to stay such a decision until such time as I have the

17  opportunity --

18               THE COURT:  Well, I haven't received them yet

19  either.  So Mr. Class understands, when motions come in that

20  aren't included in the ECF system, they have to be handled

21  individually by hand in the Clerk's office, and it does

22  sometimes take a day or two because everybody is very busy and

23  because we have lost a lot of our money to run the courts

24  efficiently.  It sometimes takes a day or two for the

25  administrative people downstairs to get those motions to me.

1          And because they are not in ECF, I have to, in my

2  own hand, indicate on each of those motions whether there is

3  permission to have them filed.  And then they go back down to

4  the Clerk's office and the Clerk's office processes them.

5  Well, it can take two days for it to get -- for them to get

6  back down even after I've authorized them.

7          I'm going into all of this detail, which is boring,

8  I know, but to explain why things sometimes take quite awhile

9  in the courthouse.  I haven't seen them yet, so I'm not

10  surprised the Government hasn't seen them.

11          No, I want to hear from the Government at this

12  time, please.

13          MR. LALLAS:  Your Honor, I do not have much to say.

14  Of course, I'd be happy to answer any questions the Court may

15  have.  What I would say is that the defendant, in his various

16  pleadings, has cited to statutory provisions in many

17  instances --

18          THE COURT:  What is your response to what we would

19  ordinarily call a Miranda motion?

20          MR. LALLAS:  Well, Your Honor, I didn't understand

21  any of the defendant's motions to be a motion to suppress

22  statements, so, I, obviously, did not submit any pleadings on

23  that topic and I have not reviewed any recorded -- any

24  videotapes or otherwise recorded instruments of his

25  interrogation.  But I would say that I have a copy of the 302

1    memorializing the defendant's interrogation, that indicates

2    that he waived his rights at the outset of the interrogation,

3    and following that waiver made a statement.

4          THE COURT:  Are you seeking to put that into the

5    record as Government's Exhibit 1?  And, of course, you have to

6    have a copy for Mr. Class.

7          MR. LALLAS:  Your Honor, I only have one copy.  As

8    I said, I didn't --

9          THE COURT:  Well, I would like to see it, but I

10   don't want to see it until Mr. Class has a copy.

11         MR. LALLAS:  I'd be happy to hand the copy that I

12   have to Mr. Class --

13         THE COURT:  When we break, everybody -- not

14   everybody, but the parties should remain for a few minutes,

15   and Ms. Hightower will get copies for everybody.

16         MR. LALLAS:  All right.  Or I would be happy to

17   submit a supplementary pleading addressing squarely the

18   Miranda issue the defendant has raised today.  As I mentioned,

19   I didn't understand any of his pleadings to be requesting

20   suppression of any statements, and, therefore, I haven't

21   previously addressed it.

22         Other than that issue, I would say, as I was

23   saying, many of the defendant's pleadings cite statutory

24   provisions and rules that apply to civil cases, not criminal

25   cases.  The Government firmly believes that there is no basis

1   to dismiss the indictment, which was returned by a properly

2   constituted grand jury, charging the defendant not only with a

3   violation of federal law, but also a violation of the D.C.

4   Code.  That indictment should not be dismissed or otherwise

5   disturbed.

6            If the Court doesn't have any questions, I'm happy

7   to sit down.

8            THE COURT:  No, but I may have some as I go through

9   everything, in which case I'll issue an order telling people

10  to respond to my questions.

11           MR. LALLAS:  Thank you.

12           THE COURT:  Mr. Class, would you come forward?  I

13  just want to say one final thing and then we can recess for

14  today.  This was a motions hearing and you have discussed the

15  law and the Federal Rules, et cetera, at great length.

16  Defense lawyers almost always file motions -- pretrial

17  motions -- and that's part of their job.  They can't file them

18  if there's no basis, but if there's any basis at all, they

19  file those motions.

20           And I know full well that even though you don't

21  have a law degree, that you do know how to read, as you've

22  said, and that you've carefully read the different Federal

23  Rules that I talked about at some length last week.  Having

24  said all of that, you may give some thought as to whether you

25  want to ask Mr. Kramer to file any pretrial motions that he

1    thinks are appropriate.  You're not required to do that.  I'm

2    just saying that you should think about that.

3             All right.  Parties are excused at this time.

4    END OF PROCEEDINGS AT 12:05 P.M.

5

6

7                     C E R T I F I C A T E

8             I, Lisa M. Foradori, RPR, FCRR, certify that

9    the foregoing is a correct transcript from the record of

10   proceedings in the above-titled matter.

11

12

13

14   Date:_____          _____

15                                   Lisa M. Foradori, RPR, FCRR

16

17

18

19

20

21

22

23

24

25