UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 13-253 (RWR) |
| RODNEY CLASS, : | TRIAL DATE: OCTOBER 27, 2014 |
| : | |
| Defendant. : | |

### GOVERNMENT'S MOTION FOR JURY INSTRUCTION ON INTENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files the following Motion seeking a limitation on the jury instruction for the elements of Carrying of a Firearm on Capitol Grounds.

The defendant at the time that he parked his vehicle, with multiple firearms and rounds of ammunition inside, was within the boundaries of the Capitol Grounds, as it is defined by statute. It is not an element of the offense that the defendant knew that the area he was in was part of the Capitol Grounds. Rather, Congress legislated that having firearms on Capitol Grounds – an area home to Congress -- required no such *mens rea* element. Within a short walk and full sight of the Capitol Building itself, with his goal to enter buildings at the Capitol Grounds to do business there, the defendant was alerted to the probability that he was in an area where firearms were illegal.

### FACTUAL BACKGROUND

The government expects the evidence at a hearing or trial to show that, on May 30, 2013, at approximately 11:35 a.m., the defendant parked his Jeep Rubicon in a permit-only parking

area on the south side of the Capitol near the U.S. Botanic Garden.[1] The place where he parked his Jeep is on Capitol Grounds. The defendant got out of the Jeep and walked into House and Senate office buildings where he had paperwork purporting to appoint him a "Private Attorney General" time stamped at the offices of various committees and Members of Congress.

While the defendant was in the Capitol and its office buildings, United States Capitol Police Special Agent Laneeka Manning was on patrol and observed the defendant's Jeep displaying North Carolina license plates parked in the permit-only parking area. Manning approached the vehicle and determined that the Jeep did not have a parking permit displayed on the front windshield. Manning looked through the windows of the Jeep and observed, in plain view, a machete strapped to the roll bar and what appeared to be a holster in the map pocket of the driver's side door. Manning radioed for additional officers and a bomb dog to come to her location in the parking lot. After conducting a search for the registered owner of the Jeep, officers obtained the name and a photograph of the defendant.

At approximately 1:30 p.m., the defendant left the Capitol building and walked back to the parking lot. As the defendant approached the Jeep and the Capitol Police officers, the officers asked the defendant if his name was Rodney Class. The defendant acknowledged that was his name. An officer asked the defendant if it was his Jeep and the defendant confirmed that the Jeep belonged to him. For the safety of the officers, a police officer asked the defendant if he had any weapons on him to which the defendant replied that he did not. An officer inquired of the defendant whether there were weapons in the vehicle and the defendant confirmed that there were.

---

[1] This area is reserved for employees of the House of Representatives. There is no sign that states this is Capitol Grounds but there are signs that indicate permit parking only. Within eyesight is the Capitol Building and visible signs of security, including a guard station, and street barriers.

The officers asked the defendant to sit in the back seat of a police car while they continued to conduct their on-scene investigation. After complying with this request, the defendant asked the officers if there was a problem and an officer informed the defendant that it is illegal to have weapons on Capitol grounds. In response, the defendant told the officers, *inter alia*, that he is a "Private Attorney General," federal law does not apply to him, the District of Columbia is not a state, federal agents do not have authority to enforce the law in the District of Columbia, and the Capitol Police do not have arrest authority.

During a search of the Jeep pursuant to a warrant, officers recovered two loaded pistols, a loaded rifle, over 200 rounds of ammunition, 15 knives, and three axes. The guns were found (a) in a holster between the front seats, (b) inside a rifle case behind the front seat, and (c) in a suitcase in the rear of the Jeep.

The defendant was interviewed at Capitol Police headquarters by special agents with the Federal Bureau of Investigation. During this interview the defendant stated, *inter alia*, that he had parked his car in the parking lot closest to the Southwest side of the Capitol, went inside the Capitol and to office buildings, including office buildings on the House and Senate sides of the Capitol, to have his "Commission by Declaration" signed, believes he is a "Constitutional Bounty Hunter" and "Private Attorney General," and plans to enforce Title 18 of the United States Code against federal judges who he believes have broken the law. He further stated that he travels around the country with his guns and other weapons and intended to bring them to eastern Pennsylvania where he planned to bring charges against a federal judge.

On May 31, 2013, the defendant was charged by complaint in District of Columbia Superior Court with Carrying a Pistol under D.C. Code § 22-4504(a). After a three-day period of detention under D.C. Code § 22-1322(b), the defendant was released on conditions of release

including a stay-away order from the District of Columbia.  On September 3, 2013, a grand jury indicted the defendant in the United States District Court for the District of Columbia on two charges: Possession of a Firearm on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(1), and Carrying a Pistol in violation of D.C. Code § 22-4504(a).[2]

The defendant on August 15, 2013, appeared before the grand jury.[3] The defendant waived his fifth amendment right not to incriminate himself and initially stated that he knew he was on Capitol Grounds:

> Q:  Let me just ask:  So you drove up to the Capitol and you have a Jeep; is that correct?
>
> A:  Correct.
>
> And you drove up to the Capitol in your Jeep and you were alone; is that correct?
>
> A:  Correct.
>
> Q:  Okay.  And you parked your Jeep on the Capitol grounds; is that correct?
>
> A:  *In behind where I normally park at, yes*.

(GJ at 4-5) (emphasis added).

The defendant acknowledged that he was aware that the Capitol comprised other buildings, including the Rayburn Building, which is to the east of the Capitol, and the Dirksen Building, which is to the west of the Capitol.  (GJ at 5).  Although the defendant disputed the definition of a firearm, he acknowledged having a Henry rifle.

> Q:  And was that [Henry] in your Jeep that you parked on Capitol grounds?
>
> A:  Correct.

(GJ at 7)

Asked about his Ruger handgun, the following exchange occurred:

---

[2] The Court subsequently granted a motion by the government to dismiss the Carrying a Pistol charge without prejudice.
[3] The defendant was advised that he was a target of the investigation.

4

Q: And that Ruger was in the Jeep that you parked on the grounds of the U.S. Capitol, correct?

A: Correct. Correct. That was the handgun, yes.

(GJ at 8).

The defendant was then asked about his "Rossi Mare's Leg" pistol. The defendant was asked

Q: Sure. And then this last gun here, that was Grand Jury Exhibit Number 7, that was also in the Jeep that you parked on the grounds of the U.S. Capitol; is that correct?

A: Correct.

After he admitted to the prosecutor that he was on Capitol Grounds, he was further asked about the subject by a juror, when the following exchange occurred:

A JUROR: Were you aware that you were parked on Capitol grounds property when you parked there?

A: No, I wasn't. For some reason I had parked there before and I've had D.C. police that know me personally know that I always parked there. And this is the first time they've come up and said "NO, we just restricted this."

A JUROR: Okay.

A: So had I known it was restricted, I wouldn't have parked there.

PROSECUTOR: Well, afterwards you saw the no parking –

A: Yeah.

Q: -- the permit parking sign there?

A: But it was up higher.

Q: Yeah. But you realized it was parking –

A: Yeah.

Q: --Permit parking only.

5

A JUROR:  At the time that you parked, you weren't aware that it was part of the Capitol Grounds?

A:  Correct.

A JUROR:  Okay.

A JUROR:  But you said you'd been there several times when you're around in this area, that area?

A:  Well, I have parked there because there was nothing – there was no sign.  *Parking there was close to – it was in between the House and the Senate.  It was easy walk through.*  All right.  And I didn't know this until they showed me, but when – if you sit in your car, you – it isn't here, it's up here.  It's not at eye level for you to notice it.  So I just hopped in, hopped out, and go.
Yes.

A JUROR:  When you're driving up to something, aren't you looking at a full view? . . . When you're driving to something, aren't you looking at a full view – you said it's up high, but you're driving up to it, so you should be able to see it from a distance before you get there?

A:  I wasn't really looking at that.  I was just driving in, got into a parking lot; that's all I was looking at.  I was on a time schedule.

A JUROR:  The point is you didn't notice it?

A:  Beg your pardon?

A JUROR:  The point is that you didn't notice it at the time?

A:  I didn't notice it at the time.

    (GJ 29-31) (*emphasis added*).

It appears, even assuming that the defendant did not understand what parts of the area constituted the Capitol Grounds, that he specifically parked at the location because of easy access to both the Senate side (north of the Capitol) and the House side (south of the Capitol). The defendant essentially considered himself in the middle.  The defendant, however, associated the issue of "Capitol Grounds" with whether he was in a restricted parking area.

The defendant stated that he did not consider leaving his vehicle in another state in part because "I got a carry permit, the guns were registered, you've got three Supreme Court rulings, Parker (phonetic) versus the District of Columbia, Heller (phonetic) versus the District of Columbia, and McDonald versus Chicago that came back in with a Supreme Court rule that [the District of Columbia] gun laws and Washington, D.C. are in direct violation of your second amendment right…."(GJ at 14).

The government sent a proposed jury instruction to the defendant in August 2014, stating that the elements of 40 U.S.C. § 5104(e)(1) required the government to prove that:

1. Rodney Class carried or had readily accessible a firearm;
2. He did so voluntarily and on purpose, and not by mistake or accident;
3. He did so while on United States Capitol Grounds.

The instruction also stated

> The term United States Capitol Grounds comprises all squares, reservations, streets, roadways, walks and other areas as defined on a map entitled "Map showing areas comprising United States Capitol Grounds." It is up to you to decide whether the area where the government alleges Mr. Class was where he allegedly carried or had readily accessible a firearm was on Capitol Grounds.[4]

The defendant has stated to the government that he believes the government must show that he knew he was on Capitol Grounds.

## ARGUMENT

Title 40, Section 5104 proscribes several activities under subsection (e)(1), which is entitled "Capitol Grounds and Buildings Security." In doing so, Congress explicitly created – and simultaneously chose not to include -- knowledge and/or intent requirements, depending on the nature and location of the offense. The most pertinent subsection reads

(1) Firearms, dangerous weapons, explosives, or incendiary devices.—An individual or group of individuals—

---

[4] The government will introduce the evidence of the map and what Capitol Grounds is defined as through proper evidentiary procedures.

(A) Except as authorized by regulations prescribed by the Capitol Police Board --

*(i)    May not carry on or have readily accessible to any individual on the Grounds or in any of the Capitol Buildings a firearm, a dangerous weapon, explosives, or an incendiary device;*

(ii)    May not discharge a firearm or explosives, use a dangerous weapon, or ignite an incendiary device, on the Grounds or in any of the Capitol Buildings; or

(iii)   May not transport on the Grounds or in any of the Capitol Buildings explosives or an incendiary device; or

(B) May not *knowingly*, with force and violence, enter or remain on the floor of either House of Congress. (emphasis added).

In the first two subsections (A) and (B), addressing firearms, dangerous devices and violence, the statute does not make knowledge an element in (A), while addressing the location of the particular harm in relation to the knowledge requirement in (B).  In other words, a hypothetical person could enter or remain on the floor of either the House or the Senate by force without violating the statute if the hypothetical person did not realize it was at that location.  Subsection (A) simply does not include that element.[5]

Furthermore, Section (e)'s other proscriptions repeatedly consider a *mens rea* requirement based in part on location.  For example, Subsection (2), headed "Violent entry and disorderly conduct," states that "An individual or group of individuals may not *willfully and knowingly* . . . enter or remain" (emphasis added) in certain proscribed areas, such as the floor of either house, without authorization.  Subsection (2) qualifies that the proscription for entering or remaining in certain other locations, such as the Library of Congress or rooms set aside or designated for the use of various members or employees, requiring an additional *mens rea* element "*with the intent* to disrupt the orderly conduct of official business," to be

---

[5] The government recognizes it must prove that Class knew he had firearms readily accessible to him at the time that he violated the statute.

8

illegal. 40 U.S.C. § 5104(e)(2)(C) (emphasis added). Similarly, other disruptive conduct such as abusive language "in the Grounds or in any of the Capitol Buildings" requires the additional element of "*with the intent* to impede, disrupt or disturb the orderly conduct of a session of Congress or either House of Congress…" 40 U.S.C § 5104(e)(2)(D) (emphasis added). However, the simple acts to "obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings" or to "engage in an act of physical violence in the Grounds or any of the Capitol Buildings," or to "parade, demonstrate, or picket in any of the Capitol Buildings" – acts that may or may not be intended to disrupt official activity -- require no such additional intent element. 40 U.S.C. § 5104(e)(3).

Section (e) within its few subsections and relatively few words manages to distinguish what intent or *mens rea* is to be proven depending in part on the action taken by the offender and, critically, the place where the offender acts. Offenders must know they are in important areas (like the "floor" of a House) because of the natural importance of those areas, but if there were other less obvious areas, such as rooms set aside for official use, the drafters required the element of an intent to disrupt, which essentially requires a knowledge that the action is taken in an area where official business could be disrupted. Likewise, Subsection (e)(1)(B) requires some knowledge of the area when entering with force and violence.

A common sense reading of the statute indicates the drafters, in writing subsection (e)(1)(A), were fully aware that they could require knowledge of specific areas, or specify intent to commit a specific act. Their choice to include a knowledge requirement in certain locations, but not in (e)(1)(A) when it came to firearms generally in the entire location, makes clear the drafters did not want such a requirement. The inclusion of particular language in one section and its omission in another presumes that "Congress intended a

9

difference in meaning." For example, in Loughrin v. United States, 134 S. Ct. 2384, 2390 the petitioner challenged whether the government had to prove that he knew he was defrauding a bank in violation of 18 U.S.C. § 1344(2). Section 1344(1) explicitly proscribed knowingly executing the "defraud[ing] of a financial institution," whereas 1344(2) proscribed knowingly executing a scheme "to obtain any of the moneys . . . owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." The Supreme Court refused to read the term "or" joining the two sections as "including," such that 1344(2) would become a subset of 1344(1). The Supreme Court stated: "[Petitioner's] view collides as well with more general canons of statutory interpretation. We have often noted that when 'Congress includes particular language in one section of a statute but omits it in another' – let alone in the very next provision – this Court 'presume[s] that Congress intended a difference in meaning.'" Id. at 2390. Overriding that principle would result in 1344(2) being rendered superfluous. Likewise, it would gut Congress' decision to assign different *mens rea* standards based on location throughout section (e) to simply read into (e)(1)(A)(i) a requirement of knowledge, because such a reading renders the term "knowingly" in (B) and elsewhere in the section unnecessary. Courts should instead give effect, if possible, to every clause and word of a statute. Loughrin, 134 S. Ct. at 2390 (citations omitted). See also Russello v. United States, 464 U.S. 16, 23 (1983) (Reading RICO forfeiture interest provision more broadly where subsequent provision in same statute on interest is more limited, stating "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the

disparate inclusion or exclusion'") (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)).

At bottom, one cannot read a knowledge requirement into the charged offense without ignoring or excising a key tenet of the statute: Congress's choice to proscribe conduct depending on the location of the offense, and not to require knowledge that one is on Capitol Grounds while possessing firearms. Yet the defendant was not at risk of failing to understand the illegality of his conduct. The defendant was in a parking lot he chose for its proximity to both the House and Senate buildings ("It was an easy walk through"), he had conducted business on Capitol Grounds in the past so he was familiar with the area, he sought to conduct business on Capitol Grounds, he could see the Capitol Building a short distance away, and he was in sight of prominent security features.

The defendant may assert that the government must prove he knew he was on Capitol Grounds because of the general presumption favoring a *mens rea* element in criminal statutes. In Staples v. United States, 511 U.S. 600 (1994), the Supreme Court ruled that the general presumption applied to petitioner's possession of a machine gun, proscribed by 26 U.S.C. § 5861(d), where the petitioner claimed ignorance of the machine gun feature of the gun. Critically, that statute did not include a knowledge requirement (except in the instance making an application for such a weapon, knowing information in the application was false), and made no attempt to delineate lawfulness based on location. The statute at issue in Staples was ambiguous and unstated about knowledge of the outlawed firearm characteristic (machine gun capability); for 40 U.S.C. § 5104(e)(1), Congress has spoken unambiguously through the structure of the statute that knowledge of location for the defendant's particular act is unnecessary. In stating that its holding was a "narrow one," the Supreme Court stated

11

"if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons . . . it would have spoken more clearly to that effect." Id. at 619-620.  40 U.S.C. § 5104(e)(1) does not regulate specific characteristics of guns for otherwise innocent gun owners; it proscribes gun owners from bringing their guns to the property of the nation's legislative branch, and the defendant should have been on alert to where he was carrying his firearms.

                Respectfully Submitted,

                Ronald C. Machen Jr.
                United States Attorney
                DC Bar #447-889


By:     \_\_\_\_\_/s/_____
                Jeff Pearlman
                Assistant United States Attorney
                DC Bar #466-901
                (202) 252-7228
                Jeffrey.pearlman@usdoj.gov